UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH F. OLIVARES,

    Plaintiff,

v.

MICHIGAN WORKERS' COMPENSATION
AGENCY, ET AL.,

    Defendants.
_____/

Case No. 18-12343

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ELIZABETH A. STAFFORD

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [38 & 49]**

Plaintiff Joseph Olivares filed a *pro se* Complaint on July 26, 2018 [Dkt. #1]. In its August 29, 2018 Order [7], the Court granted Plaintiff's request to proceed *in forma pauperis* and dismissed his complaint as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Plaintiff appealed this decision, and the United States Court of Appeals for the Sixth Circuit reversed this Court's decision and remanded the case for further proceedings [15]. On May 21, 2019, Plaintiff filed an Amended Complaint [22] under 42 U.S.C. § 1983 alleging violations of his Fourteenth Amendment due process rights.

**FACTUAL AND PROCEDURAL HISTORY**

The Court will adopt the Sixth Circuit's recitation of the facts:

Olivares filed for workers' compensation benefits, claiming that he sustained a work-related injury after falling from a ladder on May 5, 1998. In December 2000, a magistrate with the Michigan Bureau of Workers'

> Disability Compensation ("Bureau") found that Olivares "suffered an injury which arose out of and in the course of his employment," but that he was not entitled to wage-loss benefits beyond August 1, 1998 because he unreasonably refused favored work and "voluntarily removed himself from the work force." Olivares subsequently filed an application for additional benefits. In 2005, a magistrate issued an order concluding that Olivares was entitled to additional benefits from September 1, 2003, until May 20, 2005, but that he was not entitled to any benefits beyond that date because he "was no longer suffering from the effects of the work injury which disabled him in the first place." The Michigan Compensation Appellate Commission ("MCAC") affirmed the Bureau's decision.
>
> Olivares has since filed "multiple applications, appeals, motions, and pleadings" with the Bureau and the MCAC in an effort to secure additional workers' compensation benefits for his 1998 injury. As pertinent to this appeal, Olivares filed an application with the Bureau in December 2017, in which he alleged that he had recently discovered a hernia that was attributable to his 1998 work-related injury. Magistrate William Housefield dismissed the application after determining that Olivares's hernia claim was barred by the doctrine of res judicata. MCAC Commissioners Gary Goolsby, Kevin L. Weise, and Jack F. Wheatley affirmed the Bureau's dismissal of Olivares's application.

Dkt. 7-2, pg. 1-2.

This recitation does not mention Mr. Olivares's previous state and federal suits, because Mr. Olivares did not mention them. Indeed, Mr. Olivares has filed at least four federal lawsuits before this one challenging the above-described decisions by the Bureau and the MCAC.

On November 18, 2002, Mr. Olivares filed suit against Illinois National Insurance Company, AIG Claims Services, and Performance Contracting, Inc. alleging that he was not paid his lawfully-owed disability benefits following his 1998 injury. *Olivares v. Performance Contracting Group, et al.*, 2:02-cv-74585-NGE. On

January 16, 2003, The district court *sua sponte* dismissed the action under 28 U.S.C. § 1915(e)(2)(B), finding that the *Rooker-Feldman* precluded the collateral attack of adverse state court proceedings in Indiana and Michigan. Dkt. 4 (Edmunds, J.). On August 5, 2013, the Sixth Circuit affirmed this decision. *Olivares v. Performance Contracting Group, et al.*, 76 Fed.Appx. 603, 2003 WL 21805273 (6th Cir. 2003).

On March 17, 2015, Mr. Olivares filed suit against the Michigan Worker's Disability Compensation Agency ("MWDCA") and individual defendants "Elsenheimer, Campbell, and Mark Long." *Olivares v. Michigan Worker's Compensation Agency, et al.,* Case No. 15-cv-11004-AC-RSW, Dkt. 1. The district court dismissed his case as frivolous under 28 U.S.C. § 1915(e)(2)(B), citing the *Rooker-Feldman Doctrine*, Michigan's three-year statute of limitations for personal injury claims, and the complaint's general unintelligibility. *Olivares v. Michigan Worker's Compensation Agency*, 2015 WL 1530759 (E.D. Mich. Apr. 2, 2015) (Cohn, J.). On August 18, 2015, the Sixth Circuit denied Mr. Olivares the right to proceed on appeal *in forma pauperis*, finding the appeal "lack[ed] arguable basis in law." Case No. 15-1439; Dkt. 9. After Mr. Olivares failed to pay the filing fee within the allotted time, his appeal was dismissed. Case No. 15-1439; Dkt. 10.

On February 22, 2017, Mr. Olivares filed another federal lawsuit challenging decisions by the MWDCA and MCAC. This suit named several more defendants, including the Michigan Board of Magistrates, Robert Tjapkes, "Collette," and the

Michigan Compensation Appellate Commission. *Olivares v. Michigan Compensation Agency et al*, Case No. 2:17-cv-10594-AC-RSW. The district again dismissed the case as frivolous under 28 U.S.C. § 1915(e)(2)(B). *Id.*, Dkt. 4 (Cohn, J.). Plaintiff did not appeal.

On December 12, 2017, Mr. Olivares filed yet another complaint in the United States District Court for the Eastern District of Michigan challenging the results of his Worker's Compensation cases. This suit named several more defendants, including Christopher Ambrose, James Kent, and John Doe. *See Olivares v. Michigan Worker's Compensation Agency, et al.,* Case No. 2:17-cv-13994-AC-EAS. Judge Cohn again dismissed the case *sua sponte* as frivolous under 28 U.S.C. § 1915(e)(2)(B).[1] He found that the *Rooker-Feldman* doctrine deprived the court of jurisdiction and that Michigan's three-year statute of limitations for § 1983 claims

---

[1] The district court stated the following in a footnote.
> A review of the Court's electronic filing system reveals that plaintiff is a frequent pro se filer in this district. The majority, if not all, of plaintiff's complaints have been summarily dismissed. *See Olivares v. Performance Contr.*, et al., 02-74585; *Olivares v. Fifteenth District Court, et al.*, 05-71275; *Olivares v. Sutton, et al.*, 07-15201*; Olivares v. Coy, et al.,* 12-10787, *Olivares v. Tallahassee Police Dept.,* 14-10097; *Olivares v. Leon, County, et al.*, 14-10098, *Olivarez v. Michigan Workers Compensation Agency*, 15-11004, and *Olivarez v. Michigan Workers Compensation Agency,* 17-10594. Case number 15-11004 and 17- 10594 were before the undersigned and in both cases plaintiff sued the Michigan Worker's Compensation Agency and others. The Court dismissed both complaints for many of the same reasons that the present case must be dismissed.

*Olivares*, Case No. 2:17-cv-13994-AC-EAS, 2017 WL 8792723 at * 1, n. 1.

otherwise barred Plaintiff's claims. *See* Dkt. # 5; *Olivares v. Michigan Compensation Agency*, 2017 WL 8792723 (E.D. Mich. Dec. 27, 2017) (Cohn, J.). Mr. Olivares appealed, and his appeal was this time denied on the merits after he paid his filing fee. *See Olivares v. Michigan Workers' Compensation Agency, et al*, Case No. 18-1048 Dkt. 24 (6th Cir. Nov. 15, 2018). The Sixth Circuit held that the district court misapplied the *Rooker-Feldman* doctrine, which did not operate to deprive district courts of jurisdiction over state agency adjudications, but that the three-year statute of limitations barred Mr. Olivares's cause of action. The decision was affirmed. *Id.* On April 14, 2019, the United States Supreme Court denied Mr. Olivares's petition for a writ of certiorari. *Olivares v. Michigan Worker's Compensation Agency*, 139 S. Ct. 1552 (2019).

Mr. Olivares brought suit in this Court on July 26, 2018. [Dkt. 1]. On August 29, 2018, the Court dismissed his action as frivolous under 28 U.S.C. § 1915(e)(2)(B). It denied his Motion for Reconsideration on November 15, 2018. [Dkt. 12]. Mr. Olivares appealed this Court's ruling against him on November 26, 2018, 11 days after losing his prior appeal at the Sixth Circuit. [Dkt. 13]. This appeal was successful, and the Sixth Circuit vacated this Court's judgment on April 16, 2019. *See Olivares v. Michigan Worker's Compensation Agency, et al.*, Case No. 18-2369, 2019 WL 2299250 (6th Cir. 2019). The Mandate [18] from the Sixth Circuit issued in this case on May 9, 2019. On May 16, 2019, the Court entered an

otherwise barred Plaintiff's claims. *See* Dkt. # 5; *Olivares v. Michigan Compensation Agency*, 2017 WL 8792723 (E.D. Mich. Dec. 27, 2017) (Cohn, J.). Mr. Olivares appealed, and his appeal was this time denied on the merits after he paid his filing fee. *See Olivares v. Michigan Workers' Compensation Agency, et al*, Case No. 18-1048 Dkt. 24 (6th Cir. Nov. 15, 2018). The Sixth Circuit held that the district court misapplied the *Rooker-Feldman* doctrine, which did not operate to deprive district courts of jurisdiction over state agency adjudications, but that the three-year statute of limitations barred Mr. Olivares's cause of action. The decision was affirmed. *Id.* On April 14, 2019, the United States Supreme Court denied Mr. Olivares's petition for a writ of certiorari. *Olivares v. Michigan Worker's Compensation Agency*, 139 S. Ct. 1552 (2019).

Mr. Olivares brought suit in this Court on July 26, 2018. [Dkt. 1]. On August 29, 2018, the Court dismissed his action as frivolous under 28 U.S.C. § 1915(e)(2)(B). It denied his Motion for Reconsideration on November 15, 2018. [Dkt. 12]. Mr. Olivares appealed this Court's ruling against him on November 26, 2018, 11 days after losing his prior appeal at the Sixth Circuit. [Dkt. 13]. This appeal was successful, and the Sixth Circuit vacated this Court's judgment on April 16, 2019. *See Olivares v. Michigan Worker's Compensation Agency, et al.*, Case No. 18-2369, 2019 WL 2299250 (6th Cir. 2019). The Mandate [18] from the Sixth Circuit issued in this case on May 9, 2019. On May 16, 2019, the Court entered an

otherwise barred Plaintiff's claims. *See* Dkt. # 5; *Olivares v. Michigan Compensation Agency*, 2017 WL 8792723 (E.D. Mich. Dec. 27, 2017) (Cohn, J.). Mr. Olivares appealed, and his appeal was this time denied on the merits after he paid his filing fee. *See Olivares v. Michigan Workers' Compensation Agency, et al*, Case No. 18-1048 Dkt. 24 (6th Cir. Nov. 15, 2018). The Sixth Circuit held that the district court misapplied the *Rooker-Feldman* doctrine, which did not operate to deprive district courts of jurisdiction over state agency adjudications, but that the three-year statute of limitations barred Mr. Olivares's cause of action. The decision was affirmed. *Id.* On April 14, 2019, the United States Supreme Court denied Mr. Olivares's petition for a writ of certiorari. *Olivares v. Michigan Worker's Compensation Agency*, 139 S. Ct. 1552 (2019).

Mr. Olivares brought suit in this Court on July 26, 2018. [Dkt. 1]. On August 29, 2018, the Court dismissed his action as frivolous under 28 U.S.C. § 1915(e)(2)(B). It denied his Motion for Reconsideration on November 15, 2018. [Dkt. 12]. Mr. Olivares appealed this Court's ruling against him on November 26, 2018, 11 days after losing his prior appeal at the Sixth Circuit. [Dkt. 13]. This appeal was successful, and the Sixth Circuit vacated this Court's judgment on April 16, 2019. *See Olivares v. Michigan Worker's Compensation Agency, et al.*, Case No. 18-2369, 2019 WL 2299250 (6th Cir. 2019). The Mandate [18] from the Sixth Circuit issued in this case on May 9, 2019. On May 16, 2019, the Court entered an

Order [19] reopening the case. On May 21, 2019, Plaintiff filed an Amended Complaint [22].

The State of Michigan Defendants filed a Motion to Dismiss [38] on August 6, 2019. Plaintiff filed a Response [46] to that motion on August 14, 2019. On August 22, 2019 Performance Contracting Group filed an Answer and Brief [49] that asked for dismissal on *res judicata* and jurisdictional grounds. The Court construes that filing as a Motion to Dismiss and notes that Plaintiff filed a Response [58] on September 3, 2019. The Court now finds both motions suitable for determination without a hearing in accord with Local Rule 7.1(f)(2).

### STANDARDS OF REVIEW

Defendants moves to dismiss for lack of subject matters pursuant to FED. R. CIV. P. 12(b)(1). A challenge to subject matter jurisdiction takes the form of a facial attack or a factual attack. Defendants make a factual attack, which means that it challenges "the factual existence of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). Accordingly, Plaintiff's factual allegations do not get the benefit of the presumption of truthfulness, and the Court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

Defendants also move to dismiss the amended complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). On such a motion

to dismiss, the Court must "construe the complaint in a light most favorable" to Plaintiff and "accept all of his factual allegations as true." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). "Although the factual allegations in a complaint need not be detailed, they 'must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.'" *Id.* quoting *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive such a motion, Plaintiff must plead factual content that allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

## ANALYSIS

### I. Subject-Matter Jurisdiction

The Sixth Circuit has already found that the *Rooker-Feldman* doctrine does not bar district courts from reviewing MWDCA and MCAC decisions. *See Olivares v. Michigan Worker's Compensation Agency, et al,* Case No. 18-1048 Dkt. 24 (6th Cir. Nov. 15, 2018) ("Olivares's complaint challenged a decision issued by the Michigan Workers' Compensation Agency, which is not a state court. The *Rooker-*

*Feldman* doctrine is thus inapplicable."); s*ee also D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923).

The Court does, however, recognize that states cannot be sued under 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 67-71 (1989). The State of Michigan Defendants argue that the MCAC is an arm of the state and therefore entitled to Eleventh Amendment immunity. Plaintiff does nothing to dispute this characterization. The MCAC is therefore dismissed as a Defendant.

## II. Sufficiency of the Pleadings

A plaintiff can only seek relief under § 1983 against "persons acting under color of state law." 42 U.S.C. § 1983. Plaintiff's Amended Complaint does not mention any of the individual defendants by name, however, except Mark Long. Plaintiff refers only to "the Magistrate" and "the MCAC."[2] Plaintiff mentions Mark Long three times. First, he states that "Mark Long is the Director of the Michigan

---

[2] Even if Plaintiff did name the MCAC Commissioners and the MWDCA Magistrates in their individual capacities, they would likely be entitled to quasi-judicial immunity. The Supreme Court has long recognized that state agency adjudicators are immune from damages liability. *See Butz v. Economou*, 438 U.S. 478, 516 (1978). The Sixth Circuit has found, for instance, that individuals on a state Board of Medical Licensure were entitled to quasi-judicial immunity when they make decisions in a judicial function. *Quatkemeyer v. Kentucky Bd. Of Medical Licensure*, 506 Fed.Appx. 342, 346-47 (6th Cir. 2012). As with the Board in *Quatkemeyer*, MCAC decisions are subject to review by Michigan state courts, which "provides one who is dissatisfied ample opportunity to seek redress." *See* MICH. COMP. LAWS ANN. § 418.861a (West) (providing for appeals from MCAC decisions to state courts).

Worker's Compensation Agency, and owes Plaintiff a duty to transfer the bonified work order entered by the Magistrate in 2000, to the Michigan Unemployment Agency for enforcement of reasonable employment for 5 years and has not done so as of the date of the 2000 Order. (Dkt. 22, ¶ 1). Second, Plaintiff pleads that "Mark Long as Director, owes Plaintiff a duty to have said offer of work enforced, as PAS, PCG, withheld both Plaintiff's diagnoses of Herniation." (Id. ¶ 10). Third, Plaintiff pleads that Mr. Long "refused to transfer the order for enforcement by the Michigan Employment Commission after 2001 affirmation by the MCAC." (Id. at ¶ 14).

In short Plaintiff alleges that as a result of Mr. Long's failure to do his job, Mr. Olivares was not able to return to work in 2000. Defendants deny that Mr. Long had any statutory duty order the Michigan Unemployment Agency to perform any of the tasks he is alleged to have neglected. MICH. COMP. LAWS § 418.301(9)(a). Mr. Olivares's response neither mentions Mr. Long nor explains how Mr. Long's deficient performance of his alleged duties violated Mr. Olivares's constitutional rights. (*See* Dkt. 46).

Further, even if all the defendants could be sued under § 1983, Mr. Olivares's Amended Complaint still fails to state a claim upon which relief can be granted. Because the Amended Complaint alleges that the reasoning of MWDCA and MCAC adjudicators violated Mr. Olivares's due process rights, it sounds in procedural due process. (*See* Dkt. 22, pg. 3). A plaintiff alleging violations of his procedural due

process rights must, however, plead either that he exhausted his state court remedies or that those remedies are inadequate.

> If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury. Plaintiff may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations. The plaintiff must prove the inadequacy of state remedies as an element of her constitutional tort. *See Marino v. Ameruso,* 837 F.2d 45, 47 (2d Cir.1988) ("Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove *as an element* of that claim that state procedural remedies are inadequate." (emphasis added)).

*Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir. 2004) (citations omitted).

Michigan law provides that "[t]he court of appeals and the supreme court shall have the power to review questions of law involved with any final order of the commission, if application is made by the aggrieved party within 30 days after the order by any method permissible under the Michigan court rules." MICH. COMP. LAWS ANN. § 418.861a (West). Defendant has provided no evidence that he exhausted these state law remedies or that these state law remedies were insufficient. Indeed, Mr. Olivares's objections to rulings against him have primarily been legal in nature. He cannot opt out of Michigan's statutory appellate review process and proceed directly to federal court without showing that the state review process is inadequate to protect his constitutional rights. *Jefferson*, 360 F.3d at 587–88.

### III. Collateral Estoppel and *Res Judicata*

At issue is whether Mr. Olivares's many adverse decisions before the MWDCA and MCAC bar his current suit under either the doctrine of collateral estoppel or the doctrine of *res judicata*. After noting that "Michigan Worker's Compensation Agency decisions can have a preclusive effect under Michigan law," the Court of Appeals outlined Michigan's collateral estoppel framework as follows.

> In Michigan, courts apply collateral estoppel when: (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the same parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel.

*Olivares v. Michigan Worker's Compensation Agency, et al.*, Case No. 18-2369, 2019 WL 2299250 * 2 (6th Cir. 2019) (citing *Monat v. State Farm Ins.*, 677 N.W.2d 843, 845-46 (Mich. 2004)).

The Sixth Circuit remanded this case "[b]ecause the issue of Olivares's alleged hernia does not appear to have been actually litigated or adjudicated in the Bureau's prior judgments." *Id.* at * 2-3. The Court will therefore reevaluate the record of adverse adjudications that Mr. Olivares attached to his complaint.

On December 13, 2000, Magistrate L'Mell M. Smith of the MWDCA determined that Plaintiff was entitled to worker's compensation benefits from May 5, 1998 until August 1, 1998, "when he voluntarily refused to continue to perform favored work." Dkt. 1 at Pg. ID 19. The Magistrate "also awarded medical benefits in the form of rotator cuff surgery and follow up treatment." *Id.* at Pg. ID 21. Plaintiff filed another application on September 1, 2004. Trial took place before Magistrate

Christopher Ambrose on April 27, 2005 and June 7, 2005. Magistrate Ambrose concluded that Plaintiff's work-related disability ended on May 20, 2005 "and any subsequent limitations were due to age-related degenerative changes in the shoulder." *Id.* at Pg. ID 28.

After Magistrate Ambrose's decision was upheld on appeal, Plaintiff continued filing applications, appeals, and motions, including an Application for Mediation or Hearing with the MCAC on December 7, 2017. That Application was based in part on "the medical diagnosis of hernia." Dkt. 1, Pg. ID 29. At an April 3, 2018 hearing on the matter, the Magistrate Judge made the following findings:

> Allowing for a liberal reading in a light most favorable to plaintiff as to his claim in paragraph 25, he is also alleging a hernia condition discovered in 2017. MCL 401(2)(b) [sic] provides in part: "A hernia to be compensable must be clearly recent in origin and result from a strain arising out of and in the course of the employment and be promptly reported to the employer." In the claimant's Response to Defendant's Affidavit, the plaintiff attributes his hernia to the May 5, 1998 date of injury. After alleging that the magistrate ordered removal of pathology in 2005, "discovered as a double hernia to the stomach, based upon compressive forces to the back, by May 5th, 1998 fall, which resulted in tensioning forces to the stomach, leaving the forces 0 as a resultant." Plaintiff seems to imply that because of his obesity, the hernia was never discovered. In his Claimant's Motion to Strike Performance Abatement's PAS, Motion for Dismissal and Redact Order for Further Hearings as to PAS, the plaintiff states, "but to which Claimant discovered hernia, in 2017, as to the obese stated medical condition not examined in 1998, but to which PCG knew or should have known was, and is a hernia.
> There was no medical evidence presented to suggest the presence of a hernia. Even so, plaintiff by his own admission, attempts to relate the pathology to the 1998 date of injury. Again, since there is no new date of injury alleged, the plaintiff's hernia claim would be barred by the doctrine of res judicata. In addition, by the plaintiff's own admission, the hernia

was discovered in 2017, which would not be compensable as a matter of law (even if true) because of the statutory requirements.

Dkt. 1 Pg. ID 29-30.

In his July 19, 2018 appellate review of this decision, Commissioner Goolsby, of the MCAC, stated, "[n]o matter how one slices plaintiff's presentation, his complaint is an attempt to re-litigate the 1998 date of injury which has been fully litigated and as the magistrate determined is res judicata."[3] *Id.* at Pg. ID 30. Mr. Olivares received a full and fair opportunity to litigate the legal effects of his newly discovered hernia. His claims were barred because the MCAC found that his allegations of his hernia were unsupported by medical evidence and raised too late.

Second, Plaintiff raised the issue of his "hernia to the stomach," that was allegedly discovered in 2017 in the Complaint he filed in federal court on December 12, 2017. *See Olivares v. Michigan Worker's Compensation Agency, et al.,* Case No. 2:17-cv-13994-AC-EAS, Dkt. 1, pg. 5 (Cohn, J.). The dismissal of that case was affirmed on statute of limitations grounds because "plaintiff [was] complaining about conduct that occurred as early as 1998 and as late as 2005, all of which is more than three years ago." *Id.* at * 2. (referencing the three-year statute of limitations for personal injury claims outlined in M.C.L. § 600.5805(10)). Plaintiff had every opportunity to object either before the district court or before the court of appeals

---

[3] The MCAC then imposed a $4,000.00 penalty on Mr. Olivares after it determined that his claim was vexatious.

that the statute of limitations should be calculated differently, because he did not discover his hernia until 2017. Claims for relief arising from Mr. Olivares's "recently discovered hernia" are therefore also barred under the doctrine of collateral estoppel by his previous federal lawsuit.

The Court also finds that the final adjudication of the 2017 lawsuit bars the current lawsuit against Defendants Mark Long and the Michigan Compensation Appellate Commission under the doctrine of *res judicata*, because they were named as Defendants in the 2017 suit and this suit.

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.

*Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (2004)

An involuntary dismissal of a federal dispute is a decision on the merits when "a discretionary determination of the federal judge based on the individual facts of the case." *Carter v. Southeastern Michigan Transp. Authority*, 135 Mich.App. 261, 265; 351 N.W.2d 920, 922 (Mich. Ct. App. 1984). The district court's previous dismissal of Mr. Olivares's suit as frivolous was just that. Mark Long and the MCAC

are parties in common between that suit and this suit, and the matters raised in this suit were raised and resolved in the previous suit.

Similarly, all of the claims that Plaintiff makes against Defendant Performance Contracting Group were already resolved in a state court lawsuit that Plaintiff filed in 2017. *See Olivares v. Performance Contracting Group, et al.*, Case No. 17-10777-CZ (Mich. 17th Circuit Court). On February 16, 2018, the Hon. J. Joseph Rossi, Circuit Judge, held a hearing in this case. (Dkt. 39; Ex. C). Mr. Olivares did not appear. (Ex. C, Tr. 2). The Circuit Court dismissed the case with prejudice that day, finding that "Mr. Olivares is a serial plaintiff, filing essentially the same complaint in different courts hoping to get a different result." (Id. at Tr. 6). Plaintiff in his response seems to suggest that the Circuit Court lacked jurisdiction and made presumptions based on a defendant's "rambling" arguments. (Dkt. 58, pg. 7). This does not dispute that the prior action was decided on the merits, between the same parties, and did or could have resolved all the issues raised in this suit.

Plaintiff's claims against Performance Contracting Group are thus barred by the doctrine of *res judicata*. He sued the same defendant in state court on the same issues and lost after waiving his rights to defend his case by failing to appear at a hearing. Mr. Olivares's 2003 federal suit against Performance Contracting Group can also serve as grounds for a *res judicata* dismissal. *See Olivares v. Performance Contracting Group, et al.*, 76 Fed.Appx. 603; 2003 WL 21805273 (6th Cir. 2003).

## CONCLUSION

The Court has no idea how many cases Mr. Olivares has filed in state and federal courts over the last twenty years. The limited sample presented in this Opinion and Order should suffice to show that Plaintiff has had ample opportunity to litigate all of his claims against all of the Defendants. Even if his pleadings made out a viable § 1983 claim, which they do not, they can safely be dismissed under the doctrines of collateral estoppel and *res judicata*.

Accordingly,

**IT IS ORDERED** that the State of Michigan Defendants' Motion to Dismiss [38] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Performance Contracting Group's Response [49] is **CONSTRUED** as a Motion to Dismiss and **GRANTED**.

**SO ORDERED**.

Dated: September 26, 2019

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge